**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

Terrance Morris, )
                    Plaintiff, )
vs. ) No. 05-0362-CV-W-FJG
Mark Hockemeier, )
                    Defendant. )

**ORDER**

Pending before the Court are (1) Defendant's Motion to Strike Plaintiff's Witnesses (Doc. No. 101); (2) Defendant's Motion to Strike Plaintiff's Exhibits (Doc. No. 103); and (3) Plaintiff's Motion to Strike Defendant's Exhibits (Doc. No. 126). Each will be examined below.

Further, and as a preliminary matter, the Court notes from its review of the parties' witness and exhibit lists, certain witnesses and exhibits proffered by the parties appear to lack relevance as to the remaining issues in this case. To the extent the witnesses and exhibits are not linked to (1) plaintiff's alleged injury or (2) the alleged excessive use of force, such testimony and exhibits will not be allowed into evidence.

**I.      Defendant's Motion to Strike Plaintiff's Witnesses (Doc. No. 101)**

Defendant moves to strike plaintiff's witnesses: I. Pearl Fain, Larryn Lewis, Katrina Morris, and Karen Ullery Williams. With respect to witnesses Fain, Lewis, and Williams, defendant states that all three were only involved in the Office of Community Complaints (OCC) and Internal Affairs Division (IAD) investigation of plaintiff and his mother's complaint.[1] Defendant notes that no one from OCC or IAD is a defendant, there is no claim regarding an inadequate investigation, and Defendant Hockemeier did not conduct this investigation (and if the jury hears about an inadequate/incomplete investigation, they may

---

[1] Fain is the director of the OCC, and took plaintiff's complaint; Lewis is the IAD detective who investigated the complaint; Williams in the OCC analyst who reviewed the complaint.

hold it against defendant Hockemeier).

Plaintiff responds that he planned to call those witnesses "to establish the relevance of the business records" [interview statements of the Morris family, the tactical team officers, and the detectives] contained in the OCC investigative file. Plaintiff states that while he does not believe that defendant has justified the striking of Fain and Ullery-Williams, "their not being available will not prejudice his case or slow down the trial so long as Detective Lewis is a witness in the case." Plaintiff also notes in a footnote that Fain saw Terrance Morris on July 31, 2003, and could testify about the injury to his mouth. Defendant replies (1) plaintiff has now withdrawn the OCC business records (plaintiff's Exh. 7, see Doc. No. 103, 125), and (2) the parties have stipulated to the authenticity of the statements contained in the OCC file (plaintiff's exhibits 13-21), so Lewis' testimony is not necessary to "establish the relevance of [the OCC] business records." Defendant states these witnesses' testimony would be a waste of time.

After considering the parties' arguments, the Court finds that the testimony of witnesses Fain, Lewis, and Williams should be **PRECLUDED** as to OCC investigation, as the parties have stipulated to the authenticity of plaintiff's exhibits 13-21. Witness Fain may be called to testify to the extent she has knowledge of plaintiff's injury to his mouth. However, plaintiff will not be allowed unlimited witnesses on this subject.

With respect to Katrina Morris, defendant states she was never disclosed in Rule 26 disclosures or in defendants' discovery requests to plaintiffs. Defendant states that allowing Ms. Morris to testify without proper advance disclosure to defendant would be unfairly prejudicial to Sgt. Hockemeier. Plaintiff responds that Mrs. Morris was formally disclosed by Rule 26(a)(3) disclosures with the service of plaintiff's first witness list on December 5, 2006, which is nearly two months after the close of discovery. Plaintiff states that defendant's current counsel had not entered an appearance yet during discovery and disclosures, and plaintiff's counsel and defendant's prior counsel, Mr. Briesacher, had

2

discussed and agreed that any persons identified in the crime investigation file would be considered disclosed and could be listed as witnesses. Notably, no affidavit by counsel or any other exhibit was attached to plaintiff's response to verify this assertion. In reply, defendant notes (1) plaintiff only disclosed Ms. Morris's name, and not the subject of information she may testify to, on December 5, 2006, after close of discovery; (2) current counsel is unaware of any agreement with prior counsel that would permit Ms. Morris to testify, and there is no documentation of such an agreement or arrangement; (3) even if there was an agreement that names contained in the investigative file could be used as trial witnesses, the name "Katrina Morris" is not in the investigative file (defendant notes that a "Katrina Miller" was discovered in an August 6, 2003 investigative report, but nothing in the report indicates she would have any information relevant to the excessive force/battery claims. See Ex. to Doc. No. 131).

After considering the parties' arguments as to this issue, Katrina Morris will be **STRICKEN** as a witness in this matter, as she was not disclosed until after the close of discovery.

## II. Defendant's Motion to Strike Plaintiff's Exhibits (Doc. No. 103)

Defendant moves to strike plaintiff's exhibits 2, 11, 13-21, and 32.

Defendant moves to strike exhibits 11 and 13-21 as they are the OCC file in this case, regarding plaintiff's and his mother's complaints against Hockemeier. In plaintiff's response, plaintiff indicates he does not object to withdrawing exhibit 11; therefore, defendant's motion is **GRANTED** with respect to plaintiff's exhibit 11.

With respect to exhibits 13-21, these are witness statements taken by the IAD (Exs. 13-20) and a transcript of an air tape in which defendant contacted MAST ambulance regarding the injury to plaintiff's mouth (Ex. 21). Defendant states (1) these statements are hearsay, and contain double hearsay; (2) large portions of the statements are irrelevant, such as plaintiff's mother's statements about property damage made by the tactical team's

3

entry; (3) to the extent these statements are used to show an alleged inadequate OCC investigation, they are more prejudicial than probative, as defendant did not conduct the investigation. Plaintiff states that exhibits 13-20 are "stipulated business records," and include statements by the Morris family, the tactical team officers, and the detectives. Plaintiff states these statements were made close in time to the subject incident and "are not prejudicial since each person interviewed knew what the investigation was about and signed attestations that the statements were true." With respect to Ex. 21, plaintiff states it is the memorandum of the air tape in which Defendant Hockemeier called MAST ambulance because of the injury to plaintiff's mouth. Defendant notes in reply briefing that with respect to Exhibits 13-21, being authenticated and not prejudicial is not an exception to hearsay regarding prior statements. After considering the parties' arguments, the Court agrees with defendants that these statements contained in Exhibits 13-21 are hearsay and therefore **GRANTS** defendant's motion to strike as to this issue.

Finally, with respect to exhibits 2 and 32, defendant notes that exhibit 2 is plaintiff's disclosure of his expert's testimony, and exhibit 32 is the expert's designation and report. Defendant moves to strike these for the same reasons he moves to strike the expert's report and designation in its motion to strike, Doc. No. 100. Plaintiff states that he incorporates by reference his suggestions in opposition to the defendant's motion to strike the expert designation and report. As it appears from the record that plaintiff's expert plans to testify live at trial, the Court finds that the disclosure (Ex. 2) and the designation and report (Ex. 32) should be **STRICKEN** as affirmative evidence and only used for the purpose of impeachment, if necessary.

### III. Plaintiff's Motion to Strike Defendant's Exhibits (Doc. No. 126)

Plaintiff moves to strike Defendant's Exhibits 2, 4, 8, and 9. With respect to exhibits 4 and 9, in his response (Doc. No. 129), defendant states that he withdraws these exhibits. Therefore, plaintiff's motion is **GRANTED** with respect to defendant's exhibits 4 and 9.

4

Exhibit 2 is Detective Lanpher's Affidavit/Application for Search Warrant. Plaintiff objects to this exhibit because it contains hearsay statements that are prejudicial to plaintiff. Plaintiff states that the jury would not likely understand that Lanpher could use hearsay statements to support probable cause, and plaintiff notes that defendant has requested an order in limine barring discussion about alleged false statements in the search warrant affidavit/application. Plaintiff concludes "There is no need to present the search warrant affidavit/application to the jury. Defendant just wants to use the hearsay statements to make false suggestions about the Morris's [sic] after seeking a motion in limine about the same topic." Defendant responds that Hockemeier reviewed the affidavit/application for search warrant prior to executing the search warrant on July 30, 2003, and the contents are relevant as to whether defendant's actions were objectively reasonable use of force. Defendant states that the information he intends to introduce is not for the truth of the matter asserted, but is instead for determining the officer's state of mind. Defendant suggests the use of certain language from the application (see page 1-2 of Doc. No. 129), redacting the remaining language from the application, and using a limiting instruction.

After considering the parties' arguments, the Court finds that plaintiff's motion should be **PROVISIONALLY GRANTED**; however, Defendant's counsel shall seek permission from the Court before attempting to present this evidence. The language defendant suggests using from the search warrant appears to be overly broad, and the Court notes that defendant's own testimony may obviate the need to present a redacted version of the search warrant application at trial.

With respect to Exhibit 8, which is Sgt. Hockemeier's awards and commendations, plaintiff states that this is irrelevant and barred by Fed. R. Evid. 404 as character evidence not admissible to prove conduct in conformity. Defendant responds that he only intends to use this exhibit to the extent it is necessary to bolster Hockemeier's testimony by showing his good character under Fed. R. Evid. 608(a). After considering the parties'

5

Case 4:05-cv-00362-FJG   Document 136   Filed 04/03/07   Page 5 of 6

arguments, the Court finds that plaintiff's motion should be **PROVISIONALLY DENIED**. Defendant's evidence of "good character" is only admissible under Rule 608 to the extent that the evidence relates to truthfulness, and then the evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked by opinion or reputation evidence or otherwise. Defendant's counsel shall seek permission of the Court before presenting this evidence to the jury.

    **IT IS SO ORDERED.**

                                                      /s/ FERNANDO J. GAITAN, JR.
                                                      Fernando J. Gaitan, Jr.
                                                      Chief United States District Judge

Dated:  4/3/07      .
Kansas City, Missouri.